FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT MYERS DIVISION

2010 JUL 30 PM 2:35

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

CASE NUMBER:

THE SAINT CROIX CLUB OF NAPLES, INC.,
A Florida Corporation

    Plaintiff,

vs.                                  2:10-cv-476-FtM-29 SPC

QBE INSURANCE CORPORATION,
A Pennsylvania Corporation,

    Defendant.

_____/

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Plaintiff the Saint Croix Club of Naples sues Defendant QBE Insurance Corporation, and alleges:

### I. THE PARTIES, JURISIDCTION, AND VENUE

1. This is an action for damages in excess of $75,000 exclusive of interest, attorney's fees, and costs.

2. Plaintiff The Saint Croix Club of Naples hereinafter "Policyholder" is a Florida, non-profit corporation that owns and operates a condominium property located in Naples, Collier County, Florida.

1

3. Defendant QBE Insurance Corporation hereinafter "QBE" is a Pennsylvania Corporation with its principal place of business in the State of New York.

4. There is complete diversity of citizenship between the parties, accordingly, this Court's has jurisdiction over this controversy pursuant to 28 U.S.C. §1332.

5. Venue is proper in the Middle District of Florida because the acts and omissions giving rise to this lawsuit occurred here.

## II. GENERAL ALLEGATIONS

6. All conditions precedent to this action have been performed, excused, or waived.

7. At all times material, QBE sold and issued to Policyholder an insurance policy numbered QFW4121 (hereinafter referred to as "The Policy").

8. The Policy insured POLICYHOLDER for loss or damage to its buildings located on Gulfshore Boulevard in Naples, Florida.

9. The Policy provided coverage for damage caused by various perils, including windstorm.

10. On or about October 24th, 2005, Policyholder' property sustained damage caused by windstorm.

11. QBE acknowledged coverage for this loss and assigned the matter claim number 5P18897-W.

12. However, QBE insisted that the amount of damage was less than The Policy's windstorm deductible.

13. On July 7th, 2007, Policyholder filed and served a Civil Remedy Notice of Insurer Violation, (herein after CRN) concerning QBE's refusal to indemnify it for its windstorm damages or to proceed with the contractually required appraisal to resolve its dispute concerning the amount of loss. A true and correct copy of the CRN and all attachments is attached hereto as Exhibit "A"

14. The Florida Department of Financial Services accepted the CRN on or about July 11th, 2007 and assigned the matter File Number 94488

15. QBE timely responded to the CRN on or about August 28th, 2007.

16. A true and correct copy of QBE's response to the CRN is attached hereto as Exhibit "B."

17. The letter from QBE's counsel attached hereto as Exhibit "B" accurately reflected QBE's position concerning the subject loss at the time it was written.

18. QBE did not cure the underlying violation within 60 days.

19. As QBE's response to the CRN demonstrates, QBE initially made no payment for Policyholder's claim because it asserted that the amount of the insured loss was less than $141,650.

20. On or about June 7th, 2007, Policyholder, through its public insurance adjuster, advised QBE in writing that it wished to invoke the contractual appraisal process to resolve the dispute concerning the amount of the insured loss.

21. On July 12th 2007, Policyholder filed suit in state court seeking a declaratory judgment compelling QBE to participate in appraisal. That matter was removed to this Court.

22. While the lawsuit was pending, QBE agreed to proceed with an appraisal.

23. On November 7th, 2008, an appraisal award in the amount of $423,914.85 was executed.

24. On December 5th, 2008, QBE tendered payment in the amount of $269,386.85, which represented deductions of $141,650 (which QBE incorrectly asserted as the applicable windstorm deductible), $10,478 for damage to a pool heater, and $2400 for a pool pump.

25. Thereafter, by letter dated December 16th, 2008, QBE acknowledged coverage for the pool heater, and forwarded a check in the amount of $10,522.22, which included interest at Florida's statutory rate for judgments running from December 8th, 2008. However, QBE continued to refuse to pay for the pool pump.

26. Thereafter, On April 24th, 2009 this Court confirmed the appraisal award in its entirety, finding that the pool pump was covered under The Policy.

27. Policyholder has retained undersigned counsel to prosecute this action and is entitled to an award of attorney's fees and litigation costs pursuant to section 624.155(4), Florida Statutes (2009) and 627.428, Florida Statutes (2009).

### III. COUNT I- CLAIM FOR DAMAGES BASED ON INSURER'S VIOLATION OF SECTION 624.155, FLORIDA STATUTES

28. Policyholder re-alleges and incorporates by reference the allegations in paragraphs 1 through 27 above.

29. The underlying dispute concerning the amount of Policyholder's covered loss has been resolved in its favor.

30. Like Policyholder's claim, nearly 80% of all QBE condominium

association windstorm claims were closed without payment.

31.     Of the remaining 20% of QBE insured condominium associations that received any insurance payments for their 2004 and 2005 hurricane claims, more than 24% of those were forced to litigate against QBE.

32.     More than 40% of all the indemnity funds that QBE ultimately paid to any of its insureds for 2004 and 2005 hurricane claims were paid during the course of litigation.

32.     The majority of the indemnity funds that QBE ultimately to any of its insureds, including but not limited to Policyholder, for the 2004 and 2005 hurricane claims were paid during the 2008 and 2009 calendar years, more than three years the covered losses were incurred.

33.     As part of its efforts to delay the adjustment and payment of covered condominium association hurricane claims, QBE routinely made excessive and burdensome demands for production of documents. These demands were made in Policyholder's claim and in others.

34.     Similarly, QBE routinely used the provisions of its insurance policy permitting it to take an examination under oath to delay and prolong the adjustment of 2004 and 2005 hurricane claims. For example, QBE would often demand multiple examinations under oath despite the fact its policy only required the insured to submit to one.

35.     QBE's insurance policies include an appraisal clause which provides a simple and inexpensive mechanism whereby the parties could resolve a dispute concerning the amount of a covered loss.  However, as part of its calculated and

systematic efforts to prevent an insured condominium association from obtaining an appraisal, QBE, in Policyholder's case and in others, failed to take any position concerning the amount of an obviously covered loss. In doing so, it routinely violated sections 625.155(1)(a) and section 626.9541(i)3c, Florida Statutes.

36. Similarly, in Policyholder's case and in many others, QBE did not request any documents or any examinations under oath until the insured condominium association retained a public insurer adjuster or an attorney. Under QBE's interpretation of Florida case law concerning appraisal, once these requests were made, an insured would not be entitled to an appraisal until it complied with these requests.

37. In context, it is clear that these requests were mere pretexts designed to delay the adjustment and appraisal of all of these claims, including but not limited to Policyholder's claim. Furthermore, QBE routinely failed to explain the reasons why this information was requested, and thereby violated section 625.155(1)(a), Florida Statututes and section 626.9541(i)3a.

38. Rather than fulfilling its contractual, statutory, regulatory, common law, and ethical obligations, QBE has breached its duty of good faith and fair dealing and violated Section 624.155(1)(b)1, Florida Statutes by failing to settle Policyholders claims, and other similar condominium association hurricane claims, when under all the circumstances, it could and should have done so, had it acted fairly and honestly towards its insureds with due regard for their interests.

39. QBE also routinely misrepresented the scope of coverage provided by its insurance policy when it handled 2004 and 2005 condominium association hurricane claims. In Policyholder's claim, it falsely asserted that the damaged pool heater and pool

pump were not covered. QBE routinely made similar misrepresentations in other condominium claims. For example, QBE falsely told a number of other insured condominium associations that damage to windows and sliding glass doors located within a condominium unit was not covered. In doing so, QBE violated section 624.155(1)(a) and section 626.9541i3(b), Florida Statutes.

40. Like Policyholder's initial claim, many of the claims that QBE closed without payment did involve covered losses. By failing to adjust and pay these losses, QBE violated section 624.155(1)(a) and 626.9541i3(d).

41. QBE's in house and independent claims handlers routinely failed to consider covered damage when it assessed claims that were presented. Some of these failures were attributable to the fact that QBE's claim handlers were instructed that the scope of the coverage afforded by QBE's policy was narrower than it actually is. By failing to correctly train and appropriately supervise its claim handlers, QBE violated section 624.155(1)(a) and section 626.9541(i)3a, Florida Statutes.

42. All of QBE's condominium association hurricane claims were adjusted by its managing general agent, Florida Intracoastal Underwriters.

43. As part of its efforts to avoid and delay the payment of covered claims, QBE agreed to pay Florida Intracoastal Underwriters financial incentives that it referred to as "loss ratio bonuses", "profit commissions" or "contingent commissions."

44. The aforementioned actions by QBE, are done so frequently as to represent a general business practice with the motive to enhance profits at the expense of insurance consumers, including Policyholder.

45. QBE's actions describe above are willful, wanton, and malicious, and in

7

reckless disregard of its policy holders' rights, including Policyholder's rights.

46.  Plaintiff is entitled to recover prevailing party attorneys fees pursuant to Sections 624.155(4) and 627.428, Florida Statutes.

47.  As a result of QBE's acts and omission described above, Policyholder has been damaged. Policyholder's actual damages include, but are not limited to, the costs associated with retaining a public insurance adjuster as well asinterest on the indemnity funds that QBE wrongfully withheld for several years to be paid at the applicable statutory rate.

WHEREFORE Plaintiff The Saint Croix Club of Naples, respectfully requests that this Honorable Court enter judgment against Defendant QBE Insurance Corporation for actual damages, punitive damages, reasonable attorney's fees and costs, costs of this suit, interest and pre-judgment interest.

## IV – CLAIM FOR DECLARATORY JUDGMENT

48.  This is an action for declaratory judgment. The declaration sought herein would entitle Policyholder to recover more than $75,000.

49.  Policyholder re-alleges and incorporates by reference the allegations in paragraphs 1 through 46 above.

50.  Policyholder attaches hereto as Exhibit "C" a true and correct copy of a certified true copy of the subject insurance policy that Insurer previously provided to undersigned counsel.

51.  Section 627.701(4), Florida Statutes, requires a specific disclosure to be made in a font no smaller than 18 point whenever a property insurance policy contains a separate windstorm deductible.

52. Page 4 of the subject insurance policy contains language that resembles the disclosure required by Section 627.701(4), however that disclosure is in a font that is small than 18 point and does not contain all of the required language.

53. The required disclosure does not appear anywhere else in the subject policy.

54. As a result of Q BE's violation of Section 627.701(4), the windstorm deductible is void.

55. The outcome of this declaratory judgment claim will be controlled by the ultimate resolution of *Chalfonte Condominium Apartment Ass'n v. QBE Insurance Corp.*, 561 F.3d 1267 (11th Cir., 2009), which involves identical facts. The Eleventh Circuit has certified a question concerning the remedies available for the violation Section 627.701(4) to the Florida Supreme Court. As of the date of this pleading, the Florida Supreme Court has yet to decide that case.

WHEREFORE Plaintiff The Saint Croix Club of Naples respectfully requests that this Honorable Court enter a declaratory judgment in favor of Policyholder declaring that the windstorm deductible on the subject policy is void.

## DEMAND FOR TRIAL BY JURY

56. Policyholder demands trial by jury on all claims so triable.

Respectfully Submitted.

THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.
1000 W.McNAB RD. Ste. 150
POMPANO BEACH, FL 33069
(954) 942-5270
Fax:(954) 942-52782
Email. jgolant@jeffreygolantlaw.com
By _____
Jeffrey N. Golant Esq.